Mr. Justice Wylie
delivered the opinion of the court:
Previously to the 21st of July, 1870, the defendant held certain claims against the government of the United States, generally known as Montana war-claims, in regard to which, the plaintiffs had rendered him certain services. But the claims had not been paid or allowed by the Government, *273 and it became necessary to procure the passage of an act of •Congress for that object. On the 15th July, 1870, Congress passed an act authorizing the Secretary of War to ascertain the expense incurred by the authorities of Montana Territory in suppressing Indian hostilities, and the names of persons entitled to relief. The plaintiffs in this action had rendered active services in procuring the passage of that law, and evidence was given to approve that the act itself was drawn up by Mr. Weed, one of the plaintiffs.
The act having passed on the 15th of July, 1870, the following contract was entered into between the parties on the 21st of the same month :
“Whereas I have a claim against the United States for horses, equipments, and supplies furnished by me to the territorial authorities of Montana Territory, and used in suppressing Indian hostilities in said Territory in the year 1867; and whereas Weed & Clarke have been engaged in making efforts to secure the payment of said claim, and propose to •continue such efforts until said claims are settled and paid: Now, therefore, in consideration of the premises, and of the services heretofore rendered and hereafter to be rendered by said Weed & Clarke in the prosecution of said claim, I do hereby agree to pay to them, the said Weed & Clarke, twenty per cent, of the amount collected by them on said claim, and I hereby agree that the amount herein specified to be paid to them shall be paid out of the moneys allowed and paid to me on said claim at the time I may receive the same.
“And the said Weed & Clarke hereby agree to pay and discharge any claim or charge which may be made by Hon. J. M. Cavanaugh against said L. M. Black for services rendered by him in securing the payment of said claims. Dated Washington, D. 0., July 21, 1870.
“L.- M. BLACK.
“WEED & CLARKE.”
At the date of this contract the Hon. J. M. Cavanaugh was a Delegate from Montana in the Congress of the United States.
In pursuance of the act of Congress above referred to, General Hardie was appointed by the Secretary of War to investigate these claims, and Weed appeared before him in *274 December, 1870, as agent of the defendant. Part of the claims were allowed and others suspended by General Hardie.
On the 30th of May, 1872, Black, the defendant, gave written notice to Weed & Clarke that he had revoked their authority, for the reason that they had been negligent of their duties-in the business, and.that he had employed other agents in their place.
On the 3d March, 1873, an act of Congress was passed directing payment of such of the claims as had been allowed by General Hardie, which amounted to $55,613.25.
The verdict was for $11,322.65, at the rate of twenty per cent, on this sum; but the plaintiffs having entered a remittitur for $4,075,69, a judgment was entered up iñ their favor for the balance, $7,245.69.
The main question in the case was as to the validity of the-contract; and the decision of that question was left by the court to the jury, as one of actual fraud, to be determined “ upon proof.”
On its face, the contract was for a contingent fee, which was to be divided between the plaintiffs and the Delegate named for services to be rendered, or for services which had already been rendered, by all three in procuring the allowance and payment of the claims under authority of acts of Congress. One of these acts had already been passed, and one other at least had yet to be passed before the claims-could be paid.
This question has been so often decided by the Supreme Court of the United States, that we must regard it as conclusively settled. All contracts for services, generally, in procuring legislation, are void from public policy, and it is the duty of the courts so to declare. Agreements for compensation contingent upon success suggest the use of sinister and corrupt means for the accomplishment of the end desired. The law meets the suggestion of evil and strikes down the contract from its inception.” See Marshall vs. Baltimore Ohio Railroad Company, 16 How., 325; Tool Company vs. Norris, 2 Wall., 52; Trist vs. Childs, 21 Wall., 441.
Honest contracts, however, whose character appears upon their face, are unaffected by the rule. If the terms of the *275 contract be broad enough to cover services of any kind, whether secret or open, honest or dishonest, the law pronounces a ban upon the paper itself. Nor will honest services substantially performed sanctify an uni awful contract. But contracts which provide for compensation in consideration of particular services to be rendered, such as the collection of evidence, the preparation of papers, or the delivery of arguments in support of claims, are legitimate everywhere. Even these, however, would not be sustained if employed as covers for actual fraud, against the policy of the law.
These considerations are deemed sufficient to dispose of the present case finally. The other points are of minor consequence, and need not be considered.
The judgment should be set aside and a judgment entered in favor of the defendant non obstante veredicto.